UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| KATIE MCGEE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | NO.  1:20-CV-037-H |
| | § | |
| WAL-MART STORES, INC., | § | |
| | § | |
| DEFENDANT. | § | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Plaintiff Katie McGee ("McGee") was a Walmart Associate who worked for Defendant Walmart Inc. f/k/a Wal-Mart Stores ("Walmart"), Inc. at Store #535, located in Abilene, Texas, beginning on May 5, 2018.  *See* App. 1 at 7, ¶ 14. She has sued Walmart for negligence arising from a December 13, 2018 on-the-job injury. *See* App. 2. In connection with her employment, McGee entered into a Mandatory Arbitration Agreement ("Arbitration Agreement").  The Arbitration Agreement is a binding contractual commitment for both McGee and Walmart to submit disputes such as the ones in this case to arbitration.  Although McGee's claims asserted in this action arise out of an on-the-job injury, McGee has refused to submit her claims to arbitration. Accordingly, Walmart asks that McGee be compelled to arbitrate this lawsuit in compliance with the Arbitration Agreement and that her claims be stayed pending completion of arbitration.

### I.     STATEMENT OF FACTS

**A.     The Arbitration Agreement.**

Walmart is a non-subscriber and does not carry workers' compensation insurance.  On March 1, 2012, the Walmart Stores, Inc. Texas Injury Care Benefit Plan ("Plan"), an alternative to workers' compensation, became effective for associates (employees) who sustain injuries in the course and scope of their employment. *See* App. 1 at 4-5 ¶ 3.  Walmart is the Plan Sponsor of the

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**                    **PAGE 1**

Texas Injury Care Benefit Plan which was restated on July 1, 2017, and Walmart Stores, Inc. is a participating Employer. *See* App. 1 at 5,¶ 5, at 83, Ex. B at App. B.

All associates working in Texas are required to complete certain computer-based learning ("CBL") modules. The CBL modules are paperless and are accessed through computers at the Walmart location by the associate entering his or her confidential associate identification number and password. Once a module is completed by an associate, an electronic training record is retained which identifies the date the module was completed, the completion status, and the score, if the module requires a test. *See* App. 1 at 5, ¶ 6.

One of the training modules required of associates working in Texas is a CBL entitled "Texas Injury Care Benefit Plan." In general, this CBL trains associates on the benefits under the Plan, the associates' responsibilities for reporting an injury, the supervisor's requirements, the process to receive benefits, the process for appeal if benefits are denied under the Plan, and mandatory arbitration for work-related injuries. *Id.* at ¶ 7 and App. 1 at 18-23, Ex. A.

The Plan CBL has a section titled "Mandatory Arbitration Process" that informs associates that the Plan has a mandatory arbitration process to resolve various disputes such as this lawsuit. *See* App. 1 at 6,  ¶ 9. This CBL also has a section titled "Summary Plan Description" which informs the associate that he or she can access the Plan by clicking on a particular button. Associates must click the link to the Plan and review it before continuing to the next page. *Id.* at ¶ 10 and App. 1 at 10- 88, Exs. A and B. Within the Plan Description is Appendix A titled "Arbitration of Certain Injury-Related Disputes," which thoroughly describes the arbitration program. *See* App. 1 at 6, ¶ 10.

The Plan CBL also has a section titled "Important Acknowledgements" which informs associates that the purpose of this program is to make sure she is aware of and understands her rights and obligations regarding the Plan. The "Important Acknowledgements" section further

informs the associates that the current screen and the following screens contain critical information and links regarding arbitration that must be read in order to receive credit for completing this module. *See* App. 1 at 6-7, ¶ 11.

The Plan CBL further has a section titled "Completing the Course" which informs the associate to read the information of this screen and when finished, click "I understand" in order to proceed. An associate may not continue through the module without first clicking this button. The "Acknowledgement of Completion" section informs the associate that by clicking on the button below, the associate is completing the course and acknowledging the associate has read and understood the arbitration policy and that the associate understands her rights and obligations under the Plan. This section further informs the associate that her training record will be updated to show that the associate has successfully completed this course. *See* App. 1 at 7, at ¶ 12

Binding arbitration is the sole and exclusive remedy for resolving work-related injury claims or disputes. *Id.* at ¶ 13. Covered claims under the Arbitration Agreement include:

> **(b) Covered Claims:**
>
> (2) any legal or equitable claim or with respect to an Associate for any form of physical or psychological damage, harm or death which relates to an accident….(including, but not limited to, claims of negligence or gross negligence or discrimination; claims for intentional acts, …negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other non-criminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the stature, regulation or ordinance was enacted before or after the effective date of this Policy). *See* App. 1 at 76.
>
> and
>
> The arbitration requirement includes all claims listed above that and Associate has now in the future against an Employer, its officers, directors, owners, Associates, representative, agents….or assigns. *See* App. 1 at 76-77.

This policy applies to each associate and the employer without regard to whether they have

completed and signed a Receipt, Safety Pledge and arbitration acknowledgement form or similar written receipt. *See* App. 1 at 81, ¶ b(1). The associate is further informed that adequate consideration for this policy is represented by, among other things, eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the employer and associates. Any actual payment of benefits under this Plan to or with respect to an associate serves as further consideration for and represents the further agreement of such associate to the provisions of this Policy. *See* App. 1 at 7,¶ 13. In the case at bar, the Plan has paid both medical and lost wage benefits on behalf of and to McGee. *Id.* at 8-9, ¶ 20. And, Appendix D of the Plan contains an Arbitration Acknowledgment which further notifies the associate that receiving the Plan and continuing her employment is further consideration for the Arbitration Agreement:

> I also acknowledge that a mandatory employment policy is attached as an Appendix to the SPD for convenience of reference. This policy requires that claims or disputes that (1) are covered under this employment policy, (2) cannot otherwise be resolved between the Employer and me, and (3) relate to the cause of an actual or alleged on-the-job injury must be submitted to an arbitrator rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Employer at any time on or after July 1, 2017, I am accepting and agreeing to comply with these arbitration requirements. I understand that the Employer is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse…. or assigns are also subject to the Employer's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Employer. I understand that the arbitrator, and not a judge or jury, has the exclusive authority to resolve any dispute about the enforceability of this arbitration process. *See* App. 1 at 88, App. D.

McGee completed the Plan CBL module on May 8, 2018, wherein, she received notice and accessed the Arbitration Agreement. *See* App. 1 at 7, ¶ 15 and App. 1 at 94, Ex. C. The contents of the Plan, including the Summary Plan Description and Appendix A, Arbitration of Certain Injury-Related Disputes, were provided to Plaintiff through CBL training as part of her employment. Plaintiff followed the process described above to complete this CBL, and

acknowledge that she read and understood Appendix A, Arbitration of Certain Injury Related Disputes. *See* App. 1 at 8, ¶ 17. Moreover, she continued her employment after taking this CBL and was employed with Walmart through December 13, 2018, the date of her claimed injury. *See* App. 2 at 96-97, ¶¶ IV-VI.

The Arbitration Agreement includes specific provisions regarding the Arbitration Process. Among other things, the Arbitration Agreement provides for submission of arbitration to Judicial Workplace Arbitration, Inc. ("JWA") (a neutral independent arbitration provider), and requires the Associate to pay the standard Associate filing fee with Walmart also being required to pay a standard filing in addition to paying the arbitrator's entire fee and any other JWA administrative expenses. *See* App. 1 at 78-79. There is a procedure for the Arbitrator and parties to conduct discovery and motion practice consistent with the Texas Rules of Civil Procedure and the Federal Rules of Civil Procedure where applicable. *See* App. 1 at 79-80. The Arbitration Agreement expressly states that "[e]xcept as provided in this Policy, the Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings under the arbitration provisions of this Policy. To the extent that the Federal Arbitration Act is not applicable, the Texas common Law shall apply. *See* App. 1 at 81.

**B.     McGee Filed This Lawsuit in Disregard of Her Arbitration Agreement.**

McGee initiated this lawsuit on January 23, 2020. *See* App. 2 at 96. In her Original Petition, McGee alleges that on December 13, 2018, during the course and scope of her employment and while stocking items into the lower level of a "rocket cart," a shelf on the cart became unlatched and fell on her head resulting in her sustaining a traumatic brain injury. *Id.* at 96-97, ¶¶ IV-VI. She claims her injuries were a result of Walmart's negligence. *Id.* at 97-98, ¶¶ VI-X.

## II. ARGUMENT AND AUTHORITIES

### A. The Federal Arbitration Act Supports Enforcement of the Agreement.

The Federal Arbitration Act ("FAA") provides that "a written provision in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] Congress enacted the FAA to overcome courts' reluctance to enforce arbitration agreements. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625-26 (1985) (in enacting the FAA, Congress intended courts to rigorously enforce agreements to arbitrate). The FAA not only places arbitration agreements on equal footing with other contracts, but also establishes a strong federal policy in favor of arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

Under the FAA, a court must grant a motion to compel arbitration if: (1) a valid agreement to arbitrate exists, and (2) the plaintiff's claims fall within the substantive scope of the agreement. *See, e.g.*, *Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998); *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). In analyzing these questions, the Court must keep in mind that the FAA embodies "a liberal federal policy favoring arbitration agreements," and resolve any ambiguity in favor of arbitration. *Gilmer*, 500 U.S. at 25 (1991); *FedMet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999). The strong federal policy favoring arbitration applies equally in the employment context. *See, e.g.*, *Circuit City Stores, Inc.*

---

[1] The FAA applies to arbitration contracts affecting interstate commerce and requires courts to enforce a valid contractual agreement to arbitrate contained in any such contract. *See* 9 U.S.C. § 2. The Arbitration Agreement is governed by the FAA because, as noted above, it expressly states it is governed by the FAA and because Walmart is involved in interstate commerce.

*v. Adams*, 532 U.S. 105, 122 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."); *Gilmer*, 500 U.S. at 20 (enforcing agreement to arbitrate ADEA claims).

### B. McGee Agreed to Arbitrate Her Claims.

McGee and Walmart are parties to a valid arbitration agreement which covers the claims that McGee seeks to bring, and no federal statute or policy renders the claims non-arbitrable. Because Walmart has met its burden in this case, McGee cannot avoid her contractual obligation to arbitrate the claims she brings in this lawsuit.

#### 1. A Valid and Enforceable Arbitration Agreement Exists.

To compel arbitration, Walmart need only prove that an agreement to arbitrate the claims exists.2  *See Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).  General state-law principles of contract law determine whether the parties have entered an agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).

---

2 Notably, the Arbitration Agreement at issue has been upheld.  In *Wal-Mart Stores, Inc. v Constantine,* 2018 Tex. App. LEXIS 3023, (Tex. App. – Dallas Apr. 30, 2018, pet. denied), the Court of Appeals reversed the trial court's denial of Walmart's motion to compel arbitration and remanded with instructions to grant the motion to compel.  The Appellate Court found Walmart's Arbitration Agreement to be a valid, that there was consideration to support the agreement, and that the agreement was not procedurally unconscionable.  While the injury and incident giving rise to Morgan's lawsuit is different than McGee's, the facts surrounding the Arbitration Agreement between Morgan and Walmart are nearly identical.  In *Constantine*, John Morgan was employed at a Wal-Mart when a person who was not a Wal-Mart employee, shot and killed him.  A week before, that person had threatened Morgan's life on Wal-Mart's premises, and a Wal-Mart assistant manager was present when the police officer took the incident report thus making Wal-Mart aware of the threat.  Morgan's children filed suit alleging Wal-Mart had notice of the threat on Morgan's life but failed to take any action in response.  They asserted various causes of action for negligence, respondeat superior/vicarious liability, gross negligence, and wrongful death.  McGee, like Morgan, took the Texas Injury Care Benefit Plan CBL as set forth in App. 1 and has asserted a negligence claim which is covered by the Arbitration Agreement as set forth in App. 2.

The threshold issue is whether the parties agreed to arbitrate. *See, e.g., R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992). Here, McGee's consent to the Arbitration Agreement is demonstrated by her completion of an electronic certification process whereby she accepted the terms of the written Arbitration Agreement in consideration of continued employment, eligibility for benefits under the Plan, receipt of benefits under the Plan and the fact that it is mutually binding on both the employer and associates. *See* App. 1 at 7, ¶ 13 and App. 1 76-88.

Under Texas law, McGee's continued employment after receipt of unequivocal notice of the Arbitration Agreement is sufficient for the Arbitration Agreement to be enforceable: "An at-will employee who receives notice of an employer's arbitration policy and continues or commences employment accepts the terms of the agreement as a matter of law." *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006). It cannot be disputed that McGee continued working for Walmart following her receipt of the Arbitration Agreement. See App. 1 at 7, ¶14; App. 2 at 96-97, ¶¶ IV-VI. These facts demonstrate that McGee agreed to arbitrate her employment claims as a matter of law.

In addition, under Texas law, mutual promises to submit employment disputes to arbitration, such as the present Arbitration Agreement, constitute sufficient consideration to support the agreement. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010); *In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex. 2002) (noting that an arbitration provision in an employment context was not illusory where the employer could not retroactively avoid its promise to arbitrate an existing dispute by unilateral modification). Both McGee and Walmart are mutually bound by the Arbitration Agreement's non-illusory terms to submit any covered "Disputes" to arbitration. *See* App. 1 at 7, ¶ 13.

Moreover, additional consideration for this Arbitration Agreement included McGee's eligibility for benefits under the Plan and in her case, actual receipt of medical and lost wage benefits from the Plan. *See* App. 1 at 7-8,¶¶ 13,20 Accordingly, the Arbitration Agreement is a valid, enforceable contract, supported by adequate consideration.

  **2.**  **McGee's Claims Are Covered by the Arbitration Agreement.**

Once the moving party establishes the existence of a valid arbitration agreement, a presumption in favor of arbitration attaches. *See Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012); *In re First Merit Bank, NA*, 52 S.W.3d 749, 753 (Tex. 2001). The burden shifts to the opposing party to establish some reason to escape the arbitration agreement, such as proving that the claim falls outside the provision's scope. *See id.*; *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.—San Antonio 2000, pet. dism'd) (citing *Dallas Cardiology Assoc., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, writ denied)). In determining the scope of the arbitration agreement, a guiding principle is that arbitration agreements are favored, and that such agreements must be broadly construed with doubts resolved in favor of coverage. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As the United States Supreme Court stated in *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002), "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

McGee alleges she was injured in the course and scope of her employment on December 13, 2018 as a result of a rocket cart shelf falling on her head. Her petition asserts various theories of negligence. Her negligence claims fall squarely within the scope of the Arbitration Agreement. App. 1 at 76-77. The Arbitration Agreement also expressly includes any claims "of negligence or gross negligence or discrimination; claims for intentional acts,…negligent

hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other non-criminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury." There is no doubt that McGee's claims are captured within the scope of the Arbitration Agreement.

**C.     The Court Should Stay McGee's Claims in Favor of Arbitration.**

The FAA requires "that when an issue is referable to arbitration pursuant to a written agreement, the district court must stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." *William v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir. 1995). The FAA itself states that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  Accordingly, Walmart requests that the Court compel arbitration and stay McGee's claims pending completion of arbitration.

### III.     CONCLUSION

McGee agreed to arbitrate the claims raised in her Original Petition.  Walmart, therefore, respectfully requests that the Court grant this Motion to Compel Arbitration, stay McGee's claims pending completion of the arbitration, and grant Walmart such other and further relief, both at law and in equity, to which it may be entitled.

DATED: April 10th, 2020   Respectfully submitted,

By: /s/*Jennette E. DePonte*
    Jennette E. DePonte
    Texas Bar No. 00795935
    Jackson Lewis, P.C.
    Ross Tower
    500 N. Akard, Suite 2500
    Dallas, Texas 75201
    Tel: (214) 520-2400
    Fax: (214) 520-2008
    Jennette.DePonte@jacksonlewis.com

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure on this 10th day of April, 2020.

 /s/*Jennette E. DePonte*
Jennette E. DePonte

4846-5674-0281, v. 1